**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Travelers Casualty and Surety Company of America,<br><br>           Plaintiff,<br><br>vs.<br><br>W.P. Rowland Constructors Corporation, et al.,<br><br>           Defendants. | No. CV-12-0390-PHX-FJM<br><br>**ORDER** |

The court has before it plaintiff's motion for partial summary judgment on Count 1 (breach of contract) (doc. 80), defendants' response (doc. 89), plaintiff's reply (doc. 98); and plaintiff's motion for partial summary judgment on Count 2 (specific performance–collateral security) (doc. 81), defendants' response (doc. 92), and plaintiff's reply (doc. 99).

**I.**

Plaintiff Travelers Casualty is a surety company that guarantees the performance of selected contractors. In 2011, Travelers issued over $17 million in performance bonds and over $17 million in payment bonds ("Bonds") on behalf of Rowland Constructors in connection with certain construction projects in Texas and Oklahoma known as the Limestone Hospital, Comanche Hospital, and Birchman Church Projects. To induce Travelers to issue these Bonds, each of the defendants executed an Indemnity Agreement

1 promising to indemnify Travelers from any claim it might receive or loss it might sustain as
2 a result of issuing the Bonds.  Amended Compl. Ex. A.  Defendants also promised that if
3 requested they each would provide collateral as security to protect Travelers against loss or
4 exposure on the Bonds.

5       By December 2011, defendants began experiencing cash flow problems and informed
6 subcontractors that "any claim for unpaid work after the week of January 9th should be filed
7 with the Surety Claims department." Id. ¶ 37.  Defendants failed to pay subcontractors and
8 the subcontractors in turn made claims against Travelers.  Travelers has sought
9 indemnification from defendants on claims it has already paid in the amount of $626,411.34.
10 Travelers is also facing in excess of $516,000 in pending payment Bond claims, as well as
11 a lawsuit on the Limestone Project performance bond with claimed damages against Rowland
12 Constructors in excess of $2 million.  Travelers has demanded that defendants deposit
13 $1,303,088 as collateral security for pending and anticipated future claims.  Id. ¶ 48.
14 Defendants have refused to provide either the indemnification or the collateral.

15       Travelers is also concerned that defendants have transferred or otherwise encumbered
16 property that was to have served as collateral under the Bonds.  For example, on January 13,
17 2012, defendants William P. Rowland and Linda L. Rowland, trustees of the WLR Trust I,
18 recorded warranty deeds transferring real property from the WLR Trust I (an indemnitor and
19 defendant here) to the WLR Trust II and WLR Trust III, trusts that are not indemnitors. Id.
20 ¶ 42.  Travelers contends that these transfers were made in order to protect assets from
21 creditors such as Travelers.

22 **II.**

23       Defendants promised under the Indemnity Agreement to "exonerate, indemnify and
24 save [Travelers] harmless from and against all Loss." Id., Ex. A ¶ 3.  The parties agreed that
25 "[a]n itemized, sworn statement by an employee of [Travelers], or other evidence of
26 payment, shall be prima facie evidence of the propriety, amount and existence of
27 Indemnitors' liability.  Amounts due to [Travelers] shall be payable upon demand." Id.
28       Defendants also agreed under the Indemnity Agreement "to deposit with [Travelers],

- 2 -

upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss." Id. ¶ 5. A collateral security provision provides a surety with access to funds from the indemnitors before the liquidation and payment of claims, so that the surety's obligation to advance its own funds to satisfy bond obligations is reduced or eliminated. Travelers argues in Count 2 of the Amended Complaint that it is entitled to specific performance on the collateral security provision.

Travelers filed this action against defendants under the Indemnity Agreement for (1) breach of contract; (2) specific performance on the collateral security provision; (3) *quia timet*, seeking equitable relief enjoining defendants from transferring assets that would otherwise be used to satisfy bond obligations; and (4) claim and delivery, permitting Travelers to obtain possession of defendant's property in which it has perfected its rights as collateral under the Bonds. We have denied without prejudice Traveler's motion for preliminary injunction (doc. 45).

Travelers moves for summary judgment on Count 1 for breach of contract under the Indemnification Agreement. It asserts that to date it has paid $299,939.97 in claims on the Comanche Hospital Project, and $326,471.37 in claims on the Birchman Church Project, and asks us to enter partial judgment in its favor in the total principal sum of $626,411.34. Travelers also requests an award of attorney's fees and costs incurred to date in the amount of $18,327.78. To avoid filing additional motions each time a new claim is paid, Travelers seeks judgment on Count 2 of the Amended Complaint on its right to receive collateral. It seeks a judgment ordering defendants to deposit $1,303,088 in collateral security.

In response to both motions for summary judgment, defendants argue that (1) Travelers breached its duty of good faith and fair dealing under the Indemnity Agreement, and thereby failed to mitigate its damages, and (2) the Birchman Church Project Bond was not properly executed and is therefore void.

## III.

### A. Good Faith and Fair Dealing/Mitigation of Damages

Defendants contend that Travelers breached its duty of good faith and fair dealing

1 under the Indemnity Agreement when it induced Birchman Church to terminate its contract
2 with Rowland Central. They contend that this early termination of the construction
3 agreement caused Rowland to lose all potential profits that it would have realized at the
4 completion of the project. Although defendants acknowledge that they began having cash
5 flow problems in late 2011, they argue that if they had been able to complete the Birchman
6 Project they would have been able to pay off most of the bond claimants.

7 Defendants have presented no evidence to support their claim that Travelers breached
8 its duty of good faith and fair dealing. Although they argue that Travelers "effectively urged
9 Birchman Baptist Church to declare Rowland Central in default and to terminate the
10 contract," DSOF ¶ 39, the written correspondence between Travelers and Birchman
11 demonstrates that Travelers acted within its rights under the Indemnity Agreement.

12 Defendants agreed that if any defendant failed to "make payment of a properly due
13 and owing bill in connection with any Contract," Travelers could "take immediate possession
14 of Contract funds, whether earned or unearned." Amended Compl., Ex. A ¶ 6(d)(ii). It is
15 undisputed that defendants failed to pay subcontractors in September, October, and
16 November of 2011. Therefore, by their Agreement, Travelers was within its right to ask the
17 Bond obligee (Birchman Church) for the contract funds.

18 Defendants also contend that Travelers breached its duty of good faith when it filed
19 two UCC-1 financing statements against defendants' assets in December 2011. They argue
20 that the UCC filings inhibited their ability to borrow money and impaired their business
21 operations. But Travelers was within its rights under the Indemnity Agreement to perfect its
22 security interest in collateral by filing financing statements. Id. ¶ 12.

23 Travelers did not breach its duty of good faith and fair dealing in its communications
24 with Birchman or in filing the UCC-1 statements.

### B. Validity of Birchman Church Bond

26 Defendants also argue that Scott Lee, Director of Rowland Companies Central, Inc.,
27 who executed the Birchman Church Project Bond, was not an officer of Rowland and was
28 not authorized to execute the Bond. Without an authorized signature, defendants contend

- 4 -

1 that the Bond is void.

2 Again, we disagree. Defendants specifically agreed that the lack of a proper signature would not create a defense to their obligations under the Indemnity Agreement. "The failure to sign or the improper execution of a Bond shall not affect [Travelers'] rights under [the Indemnity Agreement], and Indemnitors waive any claim . . . arising out of the failure to sign or properly execute a Bond." Id. ¶ 16. Therefore, defendants have waived the argument that the Bonds were not properly executed.

### IV. Count 1 – Breach of Contract

Defendants have presented no issue of material fact with regard to its breach of the Indemnity Agreements. Therefore, it is ordered granting Travelers' motion for partial summary judgment on Count 1 in the amount of $626,411.34. We will consider Travelers' request for attorney's fees in a motion filed pursuant to LRCiv 54.2.

### V. Count 2 – Specific Performance

Defendants agreed in the Indemnity Agreement "to deposit with [Travelers] upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss." Id. ¶ 5. Travelers asserts that it has pending payment Bond claims in excess of $516,000, including four lawsuits filed against Travelers by unpaid subcontractors. In addition, Limestone has filed an action against Rowland Constructors for construction defects with $2 million in claimed damages. Travelers has demanded $1,303,088.00 in collateral as security against these pending claims. Defendants have failed to provide Travelers with any portion of the collateral demanded.

Travelers argues that as a surety, it is entitled to specific performance of the collateral security provision in the Indemnity Agreement, because it lacks an adequate remedy at law. Safeco Ins. Co. v. Schwab, 739 F.2d 431, 433 (9th Cir. 1984) ("Sureties are ordinarily entitled to specific performance of collateral security clauses," because "[i]f a creditor is to have the security for which he bargained, the promise to maintain the security must be specifically enforced."). Travelers contends that any remedy at law is inadequate in the face of defendants' repudiation of their obligations under the collateral security clause in the

- 5 -

Indemnity Agreement. Moreover, "where [a surety knows it will] have liability claims filed against it but [does] not know the amount of those claims, the legal remedy of money damages [is] not adequate." Milwaukie Constr. Co. v. Glens Falls Ins. Co., 367 F.2d 964, 966 (9th Cir. 1966).

In response, defendants do not contest their contractual obligation to provide security under the Indemnity Agreement. Instead they argue that Travelers' requested collateral is "grossly disproportionate to any reasonably foreseeable risk to Travelers." Response at 11. Specifically, defendants contend that they are owed over $800,000 for work performed on the Limestone Project, and Rowland is being provided with a qualified defense by Zurich American Insurance Company on the construction defect lawsuit, which it argues will cover any potential liability for claims made on the performance Bond. But defendants do not explain how a disputed payment that may someday be paid, or a defense of litigation under a full reservation of rights, affects Travelers' contractual right to specific performance under the collateral security provision.

Travelers has submitted evidence of pending claims on the Birchman Church Project and pending lawsuits from unpaid subcontractors and suppliers on the Limestone Hospital Project in a total amount in excess of $516,000. Travelers also has a $14 million performance bond subject to claims on the Limestone Project construction defect lawsuit, where Limestone is seeking to recover more than $2 million in damages.

Travelers seeks judgment in the amount of $1,303,088 for specific performance of defendants' collateral deposit obligation under the Indemnity Agreement. It is undisputed that defendants agreed to deliver security to collateralize their obligations in the event that Travelers faced liability on the Bonds. Travelers has sufficiently established that it currently faces in excess of $2.5 million in claims on the bonds  Travelers is entitled to specific performance of the collateral security clause in the Indemnity Agreement. See The Power P.E.O. Inc. v. Emps. Ins. of Wausau, 201 Ariz. 559, 563, 38 P.3d 1224, 1228 (Ct. App. 2002) (ordering specific performance on collateral security agreement). It is ordered granting Travelers' motion for partial summary judgment on Count 2.

## VI

**IT IS ORDERED GRANTING** Travelers' motion for summary judgment on Count 1 in the amount of $626,411.34 (doc. 80).

**IT IS FURTHER ORDERED GRANTING** Travelers' motion for summary judgment on Count 2 (doc. 81). Defendants are ordered to provide Travelers with collateral in the total amount of $1,303,088 to cover Travelers financial exposure under the Bonds. Collateral may not be disbursed until indemnifiable claims are determined. The remainder of the collateral, if any, must be returned to defendants once all claims are satisfied.

DATED this 21st day of May, 2013.

*Frederick J. Martone*
Frederick J. Martone
Senior United States District Judge